## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BRITTANY DAY, on her own behalf and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 19 C 3141 |
| | ) |
| HUMANA INSURANCE COMPANY and OSF HEALTHCARE SYSTEM GROUP MEDICAL AND DENTAL PLAN, | ) Judge Rebecca R. Pallmeyer ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brittany Day was diagnosed with brain cancer at age 28.  After two surgeries failed to remove her cancerous tumor completely, Plaintiff's doctors concluded that she should be treated with proton beam radiation therapy ("PBRT").  At the time, Plaintiff was a participant in Defendant OSF HealthCare System Group Medical and Dental Plan (the "Plan"), which is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Defendant Humana Insurance Company, which administers the Plan, determined that PBRT treatment was experimental and not medically necessary to treat Plaintiff; Humana denied her request for coverage.   Plaintiff obtained PBRT treatment anyway, and this federal lawsuit followed.  Plaintiff has sued the Plan and Humana, asserting a claim for benefits, a claim for breach of fiduciary, and a claim for attorneys' fees and costs, all under ERISA.  She also seeks to represent a class of others similarly situated.  Defendants now move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).  They also move to strike Plaintiff's class allegations.  For the following reasons, Defendants' motions to dismiss is denied, except for the breach of fiduciary duty claim asserted against the Plan, which is dismissed.  Plaintiff's class allegations are stricken without prejudice.

## BACKGROUND

### A.  The Plan

At all times relevant to this proceeding, Plaintiff Day was employed by OSF HealthCare ("OSF") as a full-time nurse.  (Compl. [1], ¶ 23.)  OSF sponsors the Plan, which is a "self-funded group healthcare plan" that is subject to ERISA.  (*Id.* ¶¶ 9-10.)  Plaintiff participated in the Plan through her employment with OSF.  (*See id.* ¶ 9.)  Defendant Humana is "in the business of providing, administering, and insuring health benefits provided to consumers." (*Id.* ¶ 12.)  Humana administers the Plan "on behalf of the Plan Sponsor," OSF.  (Compl. ¶ 14 (quoting OSF Quality Care Plan Benefits Description, Ex. A to Compl. ("Plan Benefits Description") [1-1], QCP-1.).)[1]  In this capacity, Humana does not "provide" or "insure" (meaning pay) benefits, but rather "processes and administers Claims for benefits."  (Compl. ¶ 14 (quoting Plan Benefits Description QCP-2).)  As relevant here, Humana "denies and approves Claims in accordance with the terms of [the Plan Benefits Description] and other documents governing the Plan."  (Compl. ¶ 14 (quoting Plan Benefits Description QCP-2).)  "Benefits under the [Plan] will be paid only if Humana as claims fiduciary decides in its discretion that the applicant is entitled to them."  (*Id.*)

### B.  Plan Exclusions

As noted, Human denied Plaintiff Day's claim for PBRT on the ground that the therapy is experimental and was not medically necessary and thus excluded by Plan terms.  Specifically, the Plan excludes coverage for "experimental treatment," defined to mean "procedures, services or [s]upplies" that in Humana's judgment

> (a) are in a testing stage or in early field trials on animals or humans; (b) do not have required final federal regulatory approval for commercial distribution for the specific indications and methods of use assessed; (c) are not generally recognized as acceptable medical practice; or (d) have not yet been shown in recognized medical journals to be consistently effective for the diagnosis or treatment of the Member's condition.

---

[1]  The court may properly consider the Plan Benefits Description and other documents that are "incorporated by reference in the pleadings."  *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

(Compl. ¶ 14 (quoting Plan Benefits Description QCP-23).)

The Plan also excludes coverage for services that are not "medically necessary."  (Compl. ¶ 14 (citing Plan Benefits Description QCP-30).)  According to the Plan,

"Medically Necessary" services and/or Supplies means the use of services or Supplies as provided by a Hospital, Skilled Nursing Facility, Physician or other Provider required to identify or treat your Illness or Injury and which, as determined by Humana's Medical Director or his or her designee, are:

a.      Consistent with the symptoms or diagnosis and treatment of your Illness or Injury;

b.      Appropriate with regard to standards of good medical practice;

c.      Not solely for the convenience of you, your Physician(s), Hospital, or other Providers; and

d.      The most appropriate supply or level of service which can be safely provided to you. . . .

Services, Supplies, and accommodations will not automatically be considered Medically Necessary because they were prescribed by a Physician. We may consult with professional medical consultants, peer review committees, or other appropriate sources for recommendations regarding the Medical Necessity of the services, Supplies, or accommodations a Member receives.

(Compl. ¶ 15 (quoting Benefits Description QCP-57-58).)

Whether PBRT is experimental or medically necessary as so defined is the issue in this case.

**C.      Proton Beam Radiation Therapy**

Proton beam radiation therapy "use[s] protons to deliver a more precise, but increased dose of radiation to a cancerous tumor while decreasing the exposure of radiation to the surrounding healthy tissue."  (Compl. ¶ 17.)  A physicist introduced PBRT in 1946, and the Food and Drug Administration ("FDA") "approved [it] as a form of cancer treatment in 1988."  (*Id.* ¶¶ 17-18.)  According to Plaintiff, "PBRT has become generally acknowledged as an effective form of radiologic cancer treatment."  (*Id.* ¶ 16; *see also id.* ¶ 19 (stating that PBRT is "one of the most advanced and minimally invasive forms of cancer treatment, particularly for certain types of

cancer including cancers of the brain and brain stem").)  Plaintiff also alleges that PBRT "is widely accepted and recommended by many physicians, hospitals, government agencies, and other healthcare insurers and/or payors including Medicare and Medicaid, which do not cover experimental or investigational procedures by statute."  (*Id.* ¶ 16.)

Humana has a "Medical Coverage Policy" for PBRT.  (*Id.* ¶ 19 (citing Medical Coverage Policy for Proton and Neutron Beam Radiation Therapy, Policy No. HCS-0369-012 (the "Policy"), Ex. B to Compl. [1-2], 1).)  Under the Policy, Humana members "*may be eligible* under the Plan" to receive PBRT for a handful of enumerated indications.   (Policy 2 (emphasis added).) Conversely, the Policy states, "Humana members *may NOT be eligible* under the Plan for PBRT . . .  for any indications other than those listed above."  (*Id.* (emphasis added).)   It provides eighteen examples of potentially ineligible indications.  (*See id.* at 2-3; *see also id.* at 2 (stating that the indications that "may NOT be eligible" for PBRT "may not be limited to" those eighteen examples).)   The Policy states that use of PBRT for the potentially ineligible indications is "considered experimental/investigational."  (*Id.* at 3.)  This is because, according to the Policy, PBRT is "not identified as widely used and generally accepted for any . . . proposed uses" other than those enumerated in the "may be eligible" section.  (*Id.*)  The Policy suggests "alternatives to PBRT"—including chemotherapy and intensity modulated radiation therapy ("IMRT")[2]—and states that "[p]hysician consultation is advised to make an informed decision based on an individual's health needs."  (*Id.* at 3-4.)

According to Humana, the Policy "offers mere *guidance*, advising when PBRT coverage '*may*' or '*may*' not be appropriate.  It does not purport to dictate the outcome of any PBRT

---

[2]     The Policy states that IMRT is "[a]n advanced form of high-precision radiotherapy that uses computer-controlled linear accelerators to deliver precise radiation doses to specific areas within a tumor."  (*Id.* at 6.)  Besides describing IMRT as more "traditional" than PBRT (*see, e.g.*, Compl. ¶ 19), Plaintiff does not discuss the differences between the treatments.  The court assumes the main difference is that PBRT uses a higher dose of radiation yet results in less radiation exposure to healthy tissue surrounding a tumor.  (*See id.* ¶ 17.)

authorization request." (Humana Mem. in Supp. of Mot. to Dismiss or Strike ("Humana Mot.") [26-1], 2 (citation omitted); *see also* Policy 2 ("This document is for informational purposes only.").) To this end, the Policy explains that it does not alter the terms of the Plan (or any other plan that Humana administers). (*See id.* at 1 ("State and federal law, as well as contract language, including definitions and specific inclusions/exclusions, take precedence over clinical policy and must be considered first in determining eligibility for coverage. . . . The member's health plan benefits in effect on the date services are rendered must be used.").) In addition, the Policy emphasizes that Humana's claim reviewers and health care providers should exercise independent judgment. (*See id.* ("Clinical policy is not intended to pre-empt the judgment of the reviewing medical director or dictate to health care providers how to practice medicine.").) Plaintiff alleges that, despite the Policy's purported "informational purposes" and its references to independent judgment, Humana uses it to "systemically reject[] coverage for" PBRT, "asserting that more traditional radiation therapy, such as [IMRT], is more appropriate for almost all types of cancer." (Compl. ¶ 19.)

**D.      Plaintiff's Claim for Medical Benefits**

In August 2017, when Plaintiff was 28 years old, she began experiencing severe headaches in the back of her skull. (Compl. ¶ 24.) She underwent "conservative treatment measures" that her general practitioner recommended, but the headaches did not subside. (*Id.* ¶ 25.) Magnetic resonance imaging ("MRI") of Plaintiff's brain revealed a "left frontal parasagittal mass." (*Id.*) Plaintiff was referred to Dr. Francois Geoffroy, an oncologist, and had surgery to remove the mass on September 15, 2017. (*Id.* ¶¶ 26-27.) A pathology evaluation of the mass "confirmed a diagnosis of left frontal WHO-grade II astrocytoma—a cancerous type of brain tumor that involves the brainstem, hippocampus, and optic apparatus. (*Id.* ¶ 27.)

Approximately one year later, in July 2018, a second MRI revealed that Plaintiff's tumor had returned. (*Id.* ¶ 29.) Plaintiff underwent a second operation, "but a residual tumor remained." (*Id.* ¶ 30.) A pathology evaluation "resulted in a diagnosis of diffuse astrocytoma, IDH-mutant,

WHO-grade II." (*Id.*)[3] Dr. Geoffroy recommended that Plaintiff obtain a second opinion at the University of Texas MD Anderson Care Center ("MD Anderson"), a "world-renowned cancer research, education, and care center." (*Id.* ¶¶ 31-32.) Plaintiff met with two doctors at MD Anderson: Dr. Carlos K. Matsuoka, a neuro-oncologist, and Dr. Kristina Woodhouse, a radiation oncologist. (*See id.* ¶ 33.) Drs. Matsuoka and Woodhouse "determined that [Plaintiff] was an excellent candidate for PBRT and recommended that she receive PBRT based on a variety of factors including, but not limited to, the sensitive location of her tumor, the clinical complexity of her case, and her young age." (*Id.*)

Before initiating PBRT at MD Anderson, Plaintiff submitted a pre-authorization request to Humana for coverage of the treatment. (*Id.* ¶ 34.) On September 12, 2018, Humana denied the request. (*Id.* ¶ 36.) It explained that "[a]ccording to Medical Director review and the [Policy]," PBRT "for the treatment of astrocytoma was determined to be experimental or investigational because, according to peer-reviewed medical literature, this technology is not widely used and generally accepted for treatment." (*Id.*) Because the Plan does not cover experimental or investigational services, Humana continued, "coverage for this request is not authorized." (*Id.*)

**E.     Plaintiff's Appeals**

A Plan member can engage in two levels of appeal to challenge "a denial or partial denial of any benefits under the Plan." (Plan Benefits Description QCP-47.) Humana, in turn, conducts appeals in accordance with specific criteria. (*See id.* at QCP-50.) Among other things, the reviewer of the appeal must "consider the full record of the Claim and will not afford deference to the initial Adverse Benefit Determination." (*Id.*) The reviewer is required also to "take into account all comments, documents, records, and other information submitted by [the member] or on [the

---

[3]     Plaintiff does not describe the difference between the first and second diagnoses. The court also notes that the parties refer to the tumor interchangeably as an astrocytoma and a glioma. Astrocytoma is a form of glioma tumor. (*See* Pl.'s Opp. to Defs.' Mot. to Dismiss or Strike ("Pl.'s Opp.") [48], 6 n.1; Mayo Clinic, "Glioma," *available at* https://www.mayoclinic.org/diseases-conditions/glioma/symptoms-causes/syc-20350251 (last visited June 1, 2020).)

member's] behalf relating to the Claim . . . ." (*Id.*)  If Humana denies the appeal, it must provide the member a written notification that contains "[t]he clear and detailed reason or reasons for the adverse determination"; "[a] reference to the specific Plan provisions on which the determination is based"; and "[t]he medical or clinical criteria for the determination." (*Id.* at QCP-51.)  Further, if the appeal "is based on a medical necessity or experimental treatment" determination, Humana must provide "either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to [the member's] medical circumstances." (*Id.* at QCP-52.)

On September 12, 2018—the same day Humana notified Plaintiff that it would deny coverage for PBRT—Plaintiff submitted an appeal. (*See* Compl. ¶¶ 36-37.)  Humana denied the appeal just two days later. (*Id.* ¶ 37.)  The appeal reviewers were (1) "a private review agent" who is board-certified in radiation oncology, and (2) Humana's "Grievance and Appeal medical director," a family medicine physician who "evaluated and concurred with the private review agent's assessment." (*Id.* (internal quotation marks omitted).)  In denying the appeal, Humana wrote:

> Proton beam radiation therapy is not considered a standard treatment option for low grade astrocytoma recurrences.  There are not adequate medical literatures supporting its use as equivalent, nor better or safer than standard proton radiation therapy such as 3D conformal or intensity modulated radiation therapy (IMRT) photon beam approach of treatment.  There are small numbers of patients in a minimal number of reports that are looking at the safety and efficacy of proton beam approach of treatment for low grade astrocytomas.  Until significant trials are completed and published in peer reviewed medical literature, the proposed proton beam radiation therapy for this patient and her clinical scenario is not considered standard of care and does not meet Humana medical coverage list of diagnoses.

(*Id.*)

Plaintiff submitted a second appeal on December 20, 2018. (*Id.* ¶ 38.)  She included a letter from Dr. Woodhouse explaining why PBRT was medically necessary for her condition. (*See id.*)  Dr. Woodhouse wrote, in relevant part:

> Ms. Day's diagnosis is not routine in nature, as this is a tumor adjacent to her brainstem and optic apparatus.  With Proton Therapy we are able to dose-escalate to a higher effective therapeutic dose, while simultaneously sparing all of her critical organs and preserving all essential neurologic functions, neurocognition,

and quality of life. . . . PBT is supported by the evidence based peer reviewed literature. . . . PBT is of particular importance given both Ms. Day's established baseline neurocognitive status and young age, 29 years old.

(*Id.*)

In support of her conclusions, Dr. Woodhouse cited medical guidelines from the National Comprehensive Cancer Network (the "NCCN"), the American Society of Radiation Oncology, and NRG Oncology. (*Id.*) She also "cited comparative data studies demonstrating increased chances of survival and decreased side effects associated with PBRT in comparison to IMRT for patients with brain tumors, and specifically astrocytoma." (*Id.*) Dr. Woodhouse emphasized that Plaintiff "is young, active and has a long life expectancy." (*Id.*) She stated that a "conventional IMRT plan" was "suboptimal" for Plaintiff and would result in her needing "several years of assistance, procedures and maintenance just to manage basic [] daily tasks." (*Id.*)

Humana hired Dr. Sanath Kumar, who is board-certified in radiation oncology, to review Plaintiff's second appeal. (*Id.* ¶ 39.) Dr. Kumar opined that PBRT was not medically necessary to treat Plaintiff's condition. (*Id.*) He produced a report that stated:

The patient has been diagnosed with grade II glioma and has undergone resection. Radiation therapy is appropriate in this patient. As per the medical policy, use of proton beam radiation therapy is considered investigational in adult patients with glioma [1]. Proton beam radiation therapy is not the accepted standard of medical practice in this member's condition. Currently proton beam radiation therapy is [the] subject of multiple clinical trials for use in patients with glioma. Therefore, the request for proton beam radiation therapy cannot be considered better in efficacy compared to standard proton therapy. Therefore, the request is not medically necessary and should be denied as investigational.

(*Id.*)

Dr. Kumar cited one of the same sources as Dr. Woodhouse in reaching his contrary conclusion: the NCCN Guidelines. (*See id.*) He also cited the Policy and "a clinical trial currently underway for PBRT for glioma tumors." (*Id.*) And, according to a full copy of the report that Humana provided, he cited Plaintiff's "[c]linical notes", "[l]aboratory results", "MRI report", and medical history. (Dr. Kumar Report, Ex. D to Humana Mot. to Dismiss or Strike [26-3], 1.) Dr. David Spiro, a Humana medical director who is board-certified in pediatric emergency medicine,

"reviewed and confirmed" Dr. Kumar's report. (Compl. ¶ 39.) On February 6, 2019, Humana issued a letter denying Plaintiff's second appeal. (*Id.* ¶ 40.) Referencing Dr. Kumar's report, Humana reasserted its position that PBRT "is considered to be experimental/investigational." (*Id.*)

Plaintiff underwent PBRT treatment despite Humana's refusal to cover it. (Compl. ¶ 42.) She obtained the treatment at MD Anderson in October and November 2018, and it cost approximately $110,000. (*Id.* ¶¶ 22, 42.) Thereafter, Plaintiff received oral chemotherapy, as recommended by her treating doctors at MD Anderson. (*Id.* ¶ 43.) Plaintiff's brain MRIs "have all been stable following her completion of the PBRT treatment, and her treating doctors have credited PBRT as saving her life." (*Id.* ¶ 44.)

**E.    Plaintiff's Claims and Proposed Class Definition**

Plaintiff seeks to represent a class comprising:

> All persons covered under healthcare plans administered and/or insured by Humana, who applied for coverage of PBRT based on up-to-date consensus research-supported indications of such treatment for their conditions, and were denied approval or reimbursement of medical expenses at any time within the applicable statute of limitations, or whose claims will be denied in the future, based on a determination by Humana that PBRT for up-to-date consensus research-supported indications is not medically necessary and/or experimental, investigational, or unproven.

(*Id.* ¶ 47.)

Plaintiff asserts three claims for relief on behalf of herself and the putative class members. First, she asserts a claim for benefits under ERISA § 502(a)(1)(B), which allows a participant to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff alleges that in denying her claim for coverage of PBRT, "Humana relied exclusively on" the Policy, "which is not contained in or incorporated into the Plan" and "is inconsistent with generally accepted standards of care." (Compl. ¶ 61.) She also alleges that Humana relied on "the opinions of biased and unqualified medical consultants and medical directors." (*Id.*) Humana's conduct, Plaintiff alleges, "breached the terms of the Plan, as well as

9

the group healthcare plans of the other class members who had similar claims denied based on" the Policy. (*Id.* ¶ 62.) Plaintiff seeks, among other things, reimbursement for the out-of-pocket costs of obtaining PBRT, and similar relief for the putative class members. (*Id.* ¶ 63.)

Second, Plaintiff asserts a claim for breach of fiduciary duty under ERISA § 502(a)(3), which allows a participant to bring a civil action "to enjoin any act or practice which violates [ERISA] or the terms of the plan," or "to obtain other appropriate equitable relief" to "redress such violations" or "enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). Plaintiff alleges that in administering group healthcare plans as an ERISA fiduciary, Humana violated the obligations and duties it owed to Plaintiff and putative class members by (1) "[d]esigning and implementing" the Policy, "which is based on outdated medical evidence, not consistent with generally accepted standards of care, and places monetary self-interest ahead of patient care," and (2) "[h]aving [the Policy] reviewed and applied to claims for PBRT by medical directors who are not qualified to render coverage determinations for that type of treatment." (Compl. ¶¶ 66-68.) In addition, Plaintiff alleges that "Humana has categorically and improperly denied [her] and the other potential class members' requests for coverage of PBRT, forcing them to incur the charges for that costly treatment out-of-pocket or forgo the treatment altogether." (*Id.* ¶ 69.) Plaintiff seeks equitable relief, including an injunction compelling Humana to "[r]etract its categorical denials of coverage for PBRT" and "[r]e-evaluate all prior claim denials for PBRT submitted by the other potential class members . . . and where warranted, [provide] reimbursement for the amounts incurred out-of-pocket for PBRT . . . ." (*Id.* ¶ 71.) She seeks, as well, an accounting and disgorgement of the profits Humana earned through its allegedly improper conduct. (*Id.* ¶ 72.)

Third, Plaintiff asserts a claim under ERISA § 502(g)(1) for an award of her reasonable attorneys' fees and costs. *See* 29 U.S.C. § 1132(g)(1).[4]

---

[4]    Plaintiff does not discuss the Plan's liability specifically; her briefing discusses only Humana. The Plan, for its part, joins in and adopts Humana's briefing, except on the issue of the

## DISCUSSION

### A. ERISA Claims

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See, e.g.*, *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). To survive such a motion, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), sufficient to provide a defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded facts in a plaintiff's complaint as true and views them in the light most favorable to the plaintiff. *See, e.g.*, *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Defendants argue that Plaintiff's claim for benefits must be dismissed because she does not plausibly allege that Humana arbitrarily and capriciously denied her request for PBRT coverage. They contend that Plaintiff fails to state a claim for equitable relief because that claim is "indistinguishable" from her claim for benefits. (Humana Mot. 21.) As discussed here, the court disagrees.

### 1. Claim for Benefits

In Count I of her Complaint, Plaintiff asserts a claim under ERISA § 502(a)(1)(B) to recover her out-of-pocket costs for PBRT treatment. The parties agree that the Plan grants Humana, as the administrator, discretionary authority to make benefit eligibility determinations. (*See, e.g.*, Compl. ¶¶ 13-14; Humana Mot. 14; Pl.'s Opp. 9.) Accordingly, the court applies the arbitrary and capricious standard in reviewing Humana's benefits determination. *See, e.g.*, *Lacko v. United of*

---

Plan's liability for Count II, which the court discusses below. (*See* OSF Healthcare System Group Medical and Dental Plan's Motion to Dismiss Plaintiff's Complaint Or, In the Alternative, To Strike the Class Allegations, By Joining Humana's Motion Seeking the Same Relief ("Plan Mot.") [28]; OSF Healthcare System Group Medical and Dental Plan's Reply In Support of Its Motion to Dismiss Plaintiff's Complaint Or, In the Alternative, to Strike the Class Allegations, By Joining Humana's Motion Seeking the Same Relief [53].) Accordingly, except where otherwise indicated, the court discusses the Defendants' liability jointly.

*Omaha Life Ins. Co.*, 926 F.3d 432, 439 (7th Cir. 2019). Under this standard, questions of judgment are left to the administrator to decide. *Sisto v. Ameritech Sickness & Accident Disability Benefits Plan*, 429 F.3d 698, 701 (7th Cir. 2005). The arbitrary and capricious standard is "the least demanding form of judicial review of administrative action," *Trombetta v. Cragin Fed. Bank for Sav. Emp. Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996), but it "is not a rubber stamp." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010); *see also Lacko*, 926 F.3d at 439 (same). The court will uphold the administrator's decision so long as "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Sisto*, 429 F.3d at 700 (internal quotation marks omitted). But the court will not uphold the administrator's decision "when there is an absence of reasoning in the record to support it." *Lacko*, 926 F.3d at 439 (internal quotation marks omitted).[5]

With these principles in mind, the court must determine whether Plaintiff has plausibly pleaded that Humana's decision to deny coverage for PBRT treatment was arbitrary and capricious. Defendants, of course, argue that Plaintiff has not done so. They begin by underscoring the highly deferential nature of the arbitrary and capricious standard. (*See, e.g.*, Humana Mot. 1, 11 (noting that to survive dismissal, Plaintiff's allegations must permit an inference that Humana's benefits determination was "downright unreasonable" (quoting *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011)), or "off the wall" (quoting *Rud*

---

[5] Plaintiff correctly notes that "in determining whether the plan administrator has abused its discretion in denying benefits," a court should consider, as one factor, whether the administrator has a conflict of interest. *Metro. Life Ins. v. Glenn*, 554 U.S. 105, 108 (2008); *see* Pl.'s Opp. 9 n.2. Plaintiff argues that a conflict of interest can arise not only where the administrator both determines eligibility for benefits and pays for them, but also where, as here, "a self-funded group plan is administered by an insurance company." (Pl.'s Opp. 9 n.2.) But Plaintiff has not argued that Humana had a conflict of interest, nor has she pleaded any facts that could support such an inference. Therefore, the court does not consider this issue.

*v. Liberty Life Assurance Co. of Boston*, 438 F.3d 772, 773 (7th Cir. 2006) (internal quotation marks omitted)).)   As Plaintiff urges, however, the arbitrary and capricious standard does not render benefit determinations "unchallengeable in litigation."  (Pl.'s Opp. 9; *see Lacko*, 926 F.3d at 439 (courts are not to "rubber stamp" administrators' decisions).)   The cases Humana cites in articulating the standard illustrate Plaintiff's point:   nearly all were decided at the summary judgment stage with the benefit of a full record.  *See, e.g.*, *Estate of Jones v. Children's Hosp. & Health Sys. Inc. Pension Plan*, 892 F.3d 919 (7th Cir. 2018); *Edwards*, 639 F.3d at 358; *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317 (7th Cir. 2007); *Davis v. Unum Life Ins. Co.*, 444 F.3d 569 (7th Cir. 2006); *Rud*, 438 F.3d at 773; *Manny v. Cent. States, S.E. & S.W. Areas Pension & Health & Welfare Funds*, 388 F.3d 241 (7th Cir. 2004); *Cozzie v. Metro. Life Ins. Co.*, 963 F. Supp. 647 (N.D. Ill. 1997).[6]

Defendants' arguments for dismissing the case now are unavailing.  First, they contend that Humana provided several reasoned explanations for denying coverage of Plaintiff's PBRT therapy, all of which are documented in the Complaint.  (Humana Mot. 14; *see, e.g.*, *Sisto*, 429 F.3d at 700 (administrator's decision will be upheld if "it is *possible* to offer a reasoned explanation, based on the evidence, for a particular outcome" (emphasis added) (internal quotation marks omitted).)   Defendants point to Humana's initial letter denying coverage, the letter denying Plaintiff's first-level appeal, and Dr. Kumar's report, which provides the basis for Humana's denial of Plaintiff's second-level appeal.  (*See* Humana Mot. 14 & n.12 (citing Compl. ¶¶ 36, 37, 39.).)   As referenced above, these materials state that Humana's decision to deny Plaintiff's request for

---

[6]    Defendants do cite three non-binding cases in which courts dismissed claims for benefits at the pleading stage (*see* Humana Mot. 12 & n.10 (citing *Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846 (11th Cir. 2013), *Advanced Rehab., LLC v. UnitedHealthgroup, Inc.*, 498 F. App'x 173 (3d Cir. 2012), and *Generations Physical Med., LLC v. United Healthcare Servs., Inc.*, No. 11-cv-2790, 2012 WL 136897 (D.N.J. Jan. 18, 2012))), but for reasons the court discusses below, they do not assist Defendants.  Likewise, Defendants cite several cases for the proposition that plaintiffs often have difficulty stating a claim for arbitrary agency action.  (*See id.* at 12-13.)   Because those cases do not concern ERISA, the court declines to address them.

PBRT coverage find support in peer-reviewed medical literature, the Policy, and, according to Humana, the lack of "adequate medical literature[]," studies, or clinical trials demonstrating that PBRT treatment for astrocytoma is equivalent to or safer than other treatment methods, like IMRT. (*Id.* ¶¶ 36, 37, 39.) Dr. Kumar also states in his report that because "multiple clinical trials" are in progress to test PBRT in patients with glioma, that use of PBRT cannot yet be considered "better in efficacy compared to standard proton therapy." (*Id.* ¶ 39.) Defendants urge that these explanations "cite data from the patient's case file and the medical literature, deploy expertise and logic to evaluate the proposed course of treatment, and arrive at conclusions that follow from the stated premises." (Humana Mot. 16.) In addition, they stress that Humana sought "independent expert advice" on Plaintiff's appeals (such as the opinions of Drs. Kumar and Spiro), and argue that Humana's choice to do so "is evidence of a thorough investigation." (Humana Mot. 14 (quoting *Davis*, 444 F.3d at 575).) For these reasons, Defendants maintain that Plaintiff has not adequately pleaded that Humana failed to "review the file and render a professional, medical opinion." (Humana Mot. 1 (quoting *Davis*, 444 F.3d at 579); *see generally* Humana Mot. 14-17.)

The court disagrees. First, while it is true that hiring independent experts to review a claim constitutes "evidence of a thorough investigation," *Davis*, 444 F.3d at 575, it is equally true that "[a]dministrators may not arbitrarily refuse to credit a claimant's reliable evidence, including opinions of a treating physician." *Holmstrom*, 615 F.3d at 774-75. Plaintiff alleges that Humana did exactly that. According to the Complaint, Plaintiff's treating physicians, Drs. Woodhouse and Matsuoka, recommended PBRT "based on a variety of factors including, but not limited to, the sensitive location of [Plaintiff's] tumor, the clinical complexity of her case, and her young age." (Compl. ¶ 33; *see also* Pl.'s Opp. 11.) Later, in support of Plaintiff's second-level appeal, Dr. Woodhouse submitted a letter explaining that with PBRT, the doctors would be able to provide a "higher effective therapeutic dose, while simultaneously sparing all of [Plaintiff's] critical organs and preserving all essential neurologic functions, neurocognition, and quality of life." (Compl. ¶ 38.) Dr. Woodhouse also opined that treating Plaintiff with "conventional" IMRT would jeopardize

14

her "ability to hold a normal life" and "manage basic [] daily tasks." (*Id.*) Dr. Woodhouse supported her opinions with, among other things, a citation to "comparative data studies" showing that in patients with astrocytoma, PBRT treatment "increased chances of survival and decreased side effects." (*Id.*)

Humana's explanations for denying PBRT coverage do not address these points head-on. (*See* Compl. ¶¶ 36, 37, 39.)  For example, they note Plaintiff's diagnosis and the location of her tumor, but do not substantively address her treating doctors' contention that her specific medical circumstances, including her young age, make PBRT more appropriate than other treatments. (*See id.*)  Dr. Kumar claims to have reviewed Plaintiff's clinical case file, MRI reports, and medical history, but he does not actually discuss the contents of those materials.  (*See* Dr. Kumar Report 1-2.)  Rather, he simply lists them in the "materials reviewed" section of his report.  (*See id.*)  Nor does Dr. Kumar discuss Dr. Woodhouse's opinion that according to "comparative data studies," PBRT would increase Plaintiff's odds of survival and cause fewer side effects.  (Compl. ¶¶ 38-39.)  Instead, he talks past her, opining that PBRT is considered investigational for the treatment of Plaintiff's condition because that very use is the subject of at least one ongoing clinical trial. (*Id.* ¶ 39.)  The court recognizes that ERISA does not require plan administrators or its reviewing doctors to "accord special weight to" the judgment of a plaintiff's treating physicians.  *Davis*, 444 F.3d at 578.  And doctors reviewing benefits claims need not "draft lengthy, lawyer-like opinions." *Id.* at 579.  But by incorporating Humana's benefits explanations and highlighting the points that went unaddressed, Plaintiff's Complaint permits a reasonable inference that Humana and its reviewing doctors engaged in "selective readings" of evidence "that are not reasonably consistent with the entire picture."  *Holmstrom*, 615 F.3d at 777.  "This approach is [a] hallmark of an arbitrary and capricious decision."  *Id.*[7]

---

[7]     Plaintiff also faults Humana for allegedly failing to "contact her treating doctors at MD Anderson."  (Pl.'s Opp. 12.)  But this allegation is absent from her Complaint, and Dr. Kumar's report, which the Complaint incorporates by reference, appears to disprove it.  (*See* Dr. Kumar

Arguing otherwise, Defendants zero in on Dr. Kumar's reference to ongoing clinical studies. According to Defendants, because the very treatment Plaintiff sought is still being tested, Plaintiff cannot plausibly allege that Humana was unreasonable in determining that it was experimental. (*See* Humana Mot. 16-17.) Plaintiff does not squarely respond to this argument. But dismissing her claim for benefits on that basis—as Defendants invite the court to do (*see* Humana Reply [52], 4-5)—would be inappropriate, because Plaintiff's pleadings permit an inference that the treatment is not experimental. Namely, as just discussed, Plaintiff alleges that Dr. Woodhouse provided an opinion based on "comparative data studies" that PBRT increases survival odds and reduces side-effects for patients with astrocytoma. (Compl. ¶ 38.) Plaintiff also alleges that Dr. Woodhouse works at a "world-renowned" cancer research institution (*id.* ¶ 32); that the FDA approved PBRT "as a form of cancer treatment in 1988" (*id.* ¶ 18); and that PBRT is "widely accepted" by "Medicare and Medicaid, which do not cover experimental or investigational procedures." (*Id.* ¶ 16.) And, as the court has already concluded, the Complaint plausibly alleges that Humana considered evidence selectively and arbitrarily declined to credit evidence from Plaintiff's treating physicians.[8] The court also notes that the Plan does not state that an ongoing clinical trial for a treatment automatically renders it experimental. To the contrary, it gives Humana discretion to determine whether a treatment is experimental—even if it is "in a testing stage"—and it references "early field trials" but not other forms of testing. (Plan Benefits Description QCP-23 (stating that a treatment is experimental if, "*in the judgment of Humana*," it is "in a testing stage or in *early* field trials on animals or humans" (emphasis added).) Thus, Defendants' reliance on *Larson v. Golden Rule Insurance Co.*, where the insurance policy stated

---

Report 3 (stating that Dr. Kumar placed calls to Plaintiff's "provider" on February 5 and 6, 2019, and left messages requesting return calls).) Therefore, the court does not credit this argument.

[8]     Defendants similarly fault Plaintiff for failing to articulate why the sources Humana cited in its benefits determinations do not support Humana's decisions denying coverage. (*See* Humana Reply 4-5.) But Plaintiff contends that the sources are incomplete and one-sided. Thus, she does present an argument that they do not support Humana's decisions.

16

that a treatment was investigational if it was "under study in an ongoing phase I or II clinical trial," is misplaced. No. 11-cv-138-bbc, 2012 WL 12995639, at *4 (W.D. Wis. Mar. 14, 2012). Nor does Defendants' argument account for the fact that proven treatments might continue to be the subject of testing.

Defendants also argue that Plaintiff's allegations "merely take one side on a still-open question of medical science." (Humana Mot. 17.) Making benefits determinations "amid . . . conflicting medical evidence," Humana urges, is a classic "question of judgment that should be left to [the administrator] under the arbitrary-and-capricious standard." *Davis*, 444 F.3d at 578. True, but as the court has already explained, Plaintiff has adequately pleaded that Humana considered evidence selectively, and thus that its decision was arbitrary and capricious. The court also notes that in *Davis*, a case on which Humana heavily relies, the administrator's reviewing doctors were not "completely at odds with the claimant's doctors and the medical evidence." *Id.* at 577. Here, Plaintiff has pleaded that her doctors flatly disagreed with Humana's. She has also alleged that Humana's doctors relied on the Policy, which she contends is "based on outdated medical evidence." (Compl. ¶ 21; *see also id.* ¶¶ 37, 39.) Plaintiff has sufficiently pleaded that Humana did not, in fact, provide reasoned explanations for the denial of benefits.

Next, Defendants argue that the court must dismiss Plaintiff's claim for benefits because Humana's decision was "based on a reasonable explanation of relevant plan documents." (Humana Mot. 17 (quoting *Edwards*, 639 F.3d at 360)); *see also Sisto*, 429 F.3d at 700 (internal quotation marks omitted). The Plan, Defendants emphasize, gives Humana discretion to decline coverage for treatments that, among other things, are in a "testing stage," "are not generally recognized as acceptable medical practice," or "have not yet been shown in recognized medical journals to be consistently effective . . . ." (Humana Mot. 17-18 (quoting Compl. ¶ 14).) Defendants contend that Humana "correctly identified" this "controlling contractual language," reasonably applied it to Plaintiff's case, and therefore satisfied ERISA's requirements. (Humana Mot. 18.)

17

On the present record, this argument is unavailing. Plaintiff has alleged specific factual content that plausibly suggests PBRT treatment was not in a testing stage, was generally seen as acceptable medical practice, and was shown in reputable medical literature to be consistently effective. That factual content, as noted, includes Dr. Woodhouse's opinions, as well as her alleged reliance on at least one source that Humana cited: the NCCN Guidelines. (*See* Compl. ¶¶ 38-39; Pl.'s Opp. 6.) It is reasonable to presume that Humana deems that source reputable. Plaintiff alleges, too, that PBRT is "widely accepted and recommended" as an "effective form of radiologic cancer treatment," including by Medicare and Medicaid, and that the FDA has "approved PBRT as a form of cancer treatment." (Compl. ¶¶ 16-17.) Plaintiff also alleges that Humana relied "exclusively" on the "outdated" Policy in reviewing her claim for benefits and thereby violated the Plan, which takes precedence over the Policy. (*See, e.g.*, *id.* ¶¶ 21, 61; Policy 1.) The last allegation might be insufficient by itself—Humana referenced other sources in the benefit and appeal determinations, as well—but Plaintiff has also alleged that Humana violated the Plan by giving undue weight to the Policy. For example, she alleges that Dr. Kumar's report cites only two sources besides the Policy, one of which Dr. Woodhouse herself cited in reaching the opposite conclusion. (Compl. ¶ 39.) Further, although Defendants argue that the Policy does not require Humana to take any particular position on PBRT coverage (*see* Humana Mot. 19), Plaintiff alleges that Dr. Kumar wrote in his report, "*[a]s per* the [Policy], use of [PBRT] *is considered* investigational in adult patients with glioma." (Compl. ¶ 39 (emphasis added); *see* Pl.'s Opp. 15.) Accepting these allegations as true, and considering them alongside the plausible allegations that Humana weighed evidence selectively, Plaintiff has adequately pleaded that Humana did not reasonably apply the contract language to her case.

Finally, Defendants argue that Plaintiff's claim for benefits fails under Rule 12(b)(6) because Humana "based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." (Humana Mot. 20 (quoting *Edwards*, 639 F.3d at 360)); *see also Sisto*, 429 F.3d at 700 (internal quotation marks omitted). Defendants maintain that the

18

Plan sets forth the factors to be considered in determining whether a treatment is medically necessary, and that Humana made a reasonable determination based on those factors. (Humana Mot. 20.) This argument merely repackages those discussed above. Defendants' disagreement with Plaintiff's allegations may support a ruling in Defendants' favor; that disagreement does not defeat the sufficiency of the Complaint.

Plaintiff has adequately pleaded that Humana's benefits determination was arbitrary and capricious. *Advanced Rehab*, 498 F. App'x. at 177, *Sanctuary Surgical*, 546 F. App'x at 851, and *Generations Physical*, 2012 WL 136897, at *2—the only cases Defendants cite in which courts dismissed claims for benefits at the pleading stage—do not alter this conclusion because in all three cases, the plaintiffs failed to allege specific facts showing that the procedures at issue were medically necessary. Plaintiff's Complaint does not suffer from this critical defect. Moreover, although the facts pointing to arbitrary and capricious decision-making in *Holmstrom* can be characterized as extreme, including because the administrator ignored an opinion of its own reviewing doctor (*see* Humana Reply 7 (citing *Holmstrom*, 615 F.3d at 775)), Plaintiff can survive a motion to dismiss without demonstrating that she has a slam-dunk case. She need only plead a claim that has facial plausibility, and she has done so. Finally, to the extent Defendants maintain that Plaintiff's claim for benefits must be dismissed because she does not use the words "arbitrary and capricious" in her Complaint (Humana Mot. 16), they are incorrect. *See, e.g.*, *Gustafson v. Jones*, 117 F.3d 1015, 1019 (7th Cir. 1997) (explaining that a complaint does not fail to state a claim merely because it does not plead certain "magic words"). Humana's motion to dismiss Plaintiff's Section 502(a)(1)(B) claim is denied.

### 2.    Breach of Fiduciary Duty

In Count II, Plaintiff asserts a claim under § 502(a)(3) of ERISA, which permits civil actions to be brought "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C.

19

§ 1132(a)(3). The Supreme Court in *Varity Corp.* interpreted this provision as creating a remedy only when ERISA does not otherwise provide relief. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"). That is, a plaintiff is not entitled to equitable relief for claims already covered by the statute, such as a claim to recover benefits owed under a plan. *See* 29 U.S.C. § 1132(a)(1)(B); *Rice v. Humana Ins. Co.*, No. 7 C 1715, 2007 WL 1655285, at *3 (N.D. Ill. June 4, 2007) ("Several other circuits and judges of this court have interpreted the Supreme Court's statement to mean that a claim for equitable relief under § 1132(a)(3) must be dismissed if relief may be obtained under § 1132(a)(1)(B)."). Defendants here urge that Plaintiff's claim for equitable relief is duplicative of her benefits claim and must be dismissed for this reason. The court is less certain.

First, it is not clear that dismissal is warranted even if the two claims are identical. Defendants are correct that in *Varity Corp.*, 516 U.S. at 515, the Supreme Court held that equitable relief is unavailable where Congress elsewhere provided adequate relief. The issue has been complicated, however, by the Court's more recent opinion in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011). In that case, the Court held that relief in the form of plan reformation, estoppel, and surcharge were not available to the respondents for a § 502(a)(1)(B) claim but that those remedies were available under § 502(a)(3). *Id.* at 438–42. As Plaintiff notes, numerous courts have interpreted *Amara* as permitting plaintiffs to plead simultaneous subsection (a)(3) and subsection (a)(1)(B) claims challenging the same conduct. For example, the Second Circuit reversed a district court's dismissal of an (a)(3) claim, because the plaintiff had "not yet succeeded on his § 502(a)(1)(B) claim, and it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient remedy." *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015); *see also Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 960 (9th Cir. 2016) ("While *Amara* did not

20

explicitly state that litigants may seek equitable remedies under § 1132(a)(3) if § 1132(a)(1)(B) provides adequate relief, *Amara's* holding in effect does precisely that.").   While the Seventh Circuit had previously held that relief under subsection (a)(3) is not available for a plan participant so long as relief is available under subsection (a)(1)(B), *see Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009), it has not definitively addressed this pleading issue post-*Amara*, *see George v. CNH Health & Welfare Benefit Plan*, No. 16 C 1678, 2017 WL 2241513, at *5 (E.D. Wis. May 22, 2017).   Districts courts in this circuit, however, have permitted plaintiffs to plead claims under both subsections as alternative theories.   *See id.* at *4 ("Plaintiffs are entitled to plead alternative theories of recovery at this early stage of the lawsuit."); *see also Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 901–03 (E.D. Wis. 2005) (declining to dismiss an (a)(3) claim at the pleading stage because, among other reasons, "it will often be difficult to determine whether relief is available under § 1132(a)(1)(B)" and to do so would be contrary to the Federal Rules of Civil Procedure, which permits "a plaintiff [to] plead claims hypothetically or alternatively").

Second, even when such alternative pleading has not been permitted, courts have recognized that plaintiffs may plead claims under both subsections if they are premised on different facts or seek different remedies.   For instance, the Eighth Circuit in *Jones v. Aetna Life Ins. Co.*, 856 F.3d 541, 547 (8th Cir. 2017), reversed an order dismissing a § 502(a)(3) claim as "duplicative" of the plaintiff's 502(a)(1)(B) claim for disability benefits where plaintiff alleged that defendant insurer had "used a claims-handling process that breached its fiduciary duties," resulting in a denial of the plaintiff's benefits.   The court in *Roque v. Roofers' Unions Welfare Tr. Fund*, No. 12 C 3788, 2013 WL 2242455, at *7 (N.D. Ill. May 21, 2013), dismissed an (a)(3) claim, but in that case the equitable remedy sought by the plaintiff  was monetary relief equal to the cost of the services that the plaintiff had to pay for—that is, the same relief that the plaintiff sought for his (a)(1)(B) claim. Though it dismissed the claim for equitable relief, the court acknowledged that a plaintiff may "rais[e] alternative, inconsistent theories" even if he cannot "assert[ ] the same legal

theory twice under separate labels." *Id.* at \*8 (quoting *Krase v. Life Ins. Co. of N. Am.*, No. 11 C 7659, 2012 WL 4483506, at \*3 (N.D. Ill. Sept. 27, 2012)). And the Seventh Circuit suggested in an unpublished opinion that equitable relief can be available for plaintiffs also asserting benefits claims so long as the claims are not the same. *Sumpter v. Metro. Life Ins. Co.*, 683 F. App'x 519, 521 (7th Cir. 2017) (emphasis added) ("But a denial of benefits, *without more*, does not constitute a breach of fiduciary duty that can be remedied under the equitable-relief provision; that's what section 1132(a)(1)(B) is for.").

The court declines to dismiss this claim at the pleading stage. To begin, the facts alleged in support of each claim appear to be distinct: in her (a)(1)(B) claim, Plaintiff asserts that Humana breached the Plan's terms by denying her benefits; in her (a)(3) claim, she asserts that Humana breached its fiduciary duties by, among other things, designing a policy that places the insurer's self-interest ahead of patient care. Moreover, the relief sought is distinct: whereas Plaintiff under (a)(1)(B) seeks payment in the amount of cost she incurred for her PBRT treatment, her (a)(3) claim requests an injunction requiring Humana to retract all of its categorical denials of PBRT coverage, an accounting and disgorgement of all profits made from denial of such claims, and other appropriate equitable relief. It may well be that the only relief Plaintiff is entitled to will prove to be duplicative of the recovery she seeks under (a)(1)(B), but the court is unable to make that determination without a more complete record. *See New York State Psychiatric Ass'n*, 798 F.3d at 134 (holding that a district court's dismissal of an (a)(3) claim was premature); *Carlson v. Northrop Grumman Corp.*, 196 F. Supp. 3d 830, 837–38 (N.D. Ill. 2016) (denying a motion to dismiss a claim for equitable relief where it, "as currently pleaded, is sufficiently distinct from the[] other claims to survive dismissal").

For this reason, the cases that Defendants rely on are distinguishable. In *Hakim v. Accenture U.S. Pension Plan*, 656 F. Supp. 2d 801, 813 (N.D. Ill. 2009), the court dismissed an equitable claim because the "[p]laintiff [sought] the same relief under his § 502(a)(3) claims as he does under his § 502(a)(1)(B) claim" and "the allegations supporting [the (a)(3) claims] are

identical to the allegations supporting [his] § 502(a)(1)(B) claim." Here, as noted, Plaintiff's (a)(3) and (a)(1)(B) claims on their face seek different remedies and are supported by different allegations. *See Craft v. Health Care Serv. Corp.*, No. 14 C 5853, 2016 WL 1270433, at *5 (N.D. Ill. Mar. 31, 2016) (citing *New York State Psychiatric Ass'n*, 798 F.3d at 134) (noting that "both [(a)(3) and (a)(1)(B)] claims may survive the motion to dismiss stage in appropriate case"). In *Schultz v. Prudential Ins. Co.*, 678 F. Supp. 2d 771 (N.D. Ill. 2010), another pre-*Amara* case that Defendant cites, the court was able to determine at the pleading stage that the plaintiff's requested relief under subsection (a)(3) was available under (a)(1)(B). *Id.* at 779–80. A similar analysis applies to other cases where courts at this stage have been able to determine that (a)(3) claims are duplicative of (a)(1)(B) claims. *See, e.g., Nemitz v. Metro. Life Ins. Co.*, No. 12 C 8039, 2013 WL 3944292, at *4 (N.D. Ill. July 31, 2013) (emphasis added) ("There is *no question* in this case that the § 502(a)(3) claims in Counts I, III, IV and V merely repackage the denial of benefits claim also located in Count I.").

Defendants also argue, in a footnote, that the remedies Plaintiff seeks under (a)(3) are not available under that provision. As the court understands those requests, however, Plaintiff seeks an order directing that Humana retract its categorical denials of PBRT and reevaluate PBRT claims—that is, equitable relief. *See Amara,* 563 U.S. at 441 ("[T]he District Court's remedy [for an (a)(3) claim] essentially held CIGNA to what it had promised, namely, that the new plan would not take from its employees benefits they had already accrued. This aspect of the remedy resembles estoppel, a traditional equitable remedy."). Plaintiff's request for reimbursement for the amounts incurred out-of-pocket for PBRT and an accounting of Humana's profits resemble a surcharge remedy, also recognized as available equitable relief in *Amara. Id.* at 441–42 (citations omitted) (quoting *Princess Lida of Thurn and Taxis v. Thompson,* 305 U.S. 456, 464 (1939)) ("[T]he fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the

23

trustee's unjust enrichment.  Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'").  Again, Defendants may ultimately be correct that the only available equitable relief would duplicate the relief Plaintiff seeks under (a)(1)(B), but the court is not willing to draw that conclusion as a matter of law in a pleading challenge.  Finally, the court finds that Plaintiff has adequately pleaded a breach of a fiduciary duty under ERISA.  "In order to prevail on a claim for breach of fiduciary duty under ERISA, a plaintiff must prove (1) that defendants are plan fiduciaries; (2) that defendants breached their fiduciary duties; and (3) that their breach caused harm to the plaintiffs."  *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007).  Plaintiff has met that standard here, at least with regard to Humana:  Defendants do not dispute that Humana is a plan fiduciary.  And Plaintiff has adequately alleged a breach of Humana's fiduciary duties (*e.g.*, placing its monetary self-interest ahead of patient care) and explained how that breach harmed her (*e.g.*, incurring out-of-pocket expenses).

For these reasons, Defendants' motion to dismiss Count II is denied as it applies to Humana.  On the other hand, Plaintiff does not rebut the Plan's argument that it is not a fiduciary under ERISA, and therefore cannot be subject to a breach of fiduciary duty claim.  (*See* Plan Mot. 2.)  Accordingly, the court dismisses Count II as it applies to the Plan.  Finally, the court denies Defendants' motion to dismiss Count III, Plaintiff's claim for attorneys' fees and costs, which derives from the surviving ERISA claims.

**B.    Class Allegations**

Plaintiff seeks to certify a class comprising "[a]ll persons covered under healthcare plans administered and/or insured by Humana, who applied for coverage of PBRT based on up-to-date consensus research-supported indications of such treatment for their conditions, and were denied [or will be denied] approval or reimbursement of medical expenses" based on Humana's determination that the treatment is not "medically necessary" or is "experimental, investigational, or unproven." (Compl. ¶ 47.)  Defendants move to strike the class allegations.  They argue that

the court cannot appropriately certify the proposed class for several reasons, including, according to Defendants, that Plaintiff has not established the existence of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).

Federal Rule of Civil Procedure 23(c)(1)(A) requires the court to determine at "an early practicable time after a person sues or is sued as a class representative . . . whether to certify the action as a class action." It is well-settled that "a motion to strike class allegations . . . is an appropriate device to determine whether the case will proceed as a class action." *Cholly v. Uptain Grp., Inc.*, No. 15 C 5030, 2017 WL 449176, at *3 (N.D. Ill. Feb. 1, 2017); *see also, e.g.*, *Valentine v. WideOpen West Fin., LLC*, 288 F.R.D. 407, 414 (N.D. Ill. 2012). Where it is apparent from the pleadings that the class allegations "are facially defective and definitively establish that a class action cannot be maintained," the court may rule on a motion to strike class allegations before class discovery or before the plaintiff moves for class certification. *Valentine*, 288 F.R.D. at 414 (internal quotation marks omitted); *see Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("[A] court may deny class certification even before the plaintiff files a motion requesting certification.").

A motion to strike class allegations is analyzed under Federal Rule of Civil Procedure 23. As on a motion for class certication, the plaintiff bears the burden of showing class certification is appropriate. *See Valentine*, 288 F.R.D. at 414. That is, a party seeking class certification must show, first, that the proposed class meets all four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See, e.g.*, *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Second, the party seeking certification must satisfy "at least one of the three requirements listed in Rule 23(b)." *Priddy*, 870 F.3d at 660 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)). "Failure to meet any of the Rule's requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). As detailed below, the court concludes that Plaintiff's class allegations clearly fail to establish the existence of common

25

questions of law or fact. The class allegations are also deficient because they seek to certify a fail-safe class. Accordingly, the court strikes Plaintiff's class allegations without prejudice.

### 1.     Commonality

To establish this first element, a plaintiff must do more than raise "common questions—even in droves." *Dukes*, 564 U.S. at 350 (internal quotation marks omitted). Rather, she must demonstrate that a class-wide proceeding is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Id.* "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Messner,* 669 F.3d at 815 (quoting *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005)). By contrast, if "the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.*

The Supreme Court's decision in *Dukes* is instructive. In *Dukes,* on behalf of a nationwide class of approximately 1.5 million female employees, plaintiffs alleged that defendant Wal-Mart violated Title VII by a policy that gave local supervisors discretion in pay and promotion decisions that discriminated against women. *See* 564 U.S. at 342-43. The Court determined that Wal-Mart's "'policy' of *allowing discretion* by local supervisors over employment matters" was "just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy *against having* uniform employment practices." *Id.* at 355; *see also id.* at 352 ("Without some glue holding the alleged *reasons* for [the employment decisions] together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*."). In contrast with *Dukes*, courts have concluded that plaintiffs do satisfy the commonality requirement where they allege that "a defendant's standardized conduct toward proposed class members, such as generalized policies that affect all class members in the same way," caused the class members' injuries. *N.B. ex rel. Buchanan v. Hamos*, No. 11 C 6866, 2012 WL 1953146, at *9 (N.D. Ill. May 30, 2012) (citing *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 487-90 (7th Cir. 2012)

26

(class treatment was appropriate for disparate impact claim challenging company-wide policies that local managers were required to follow), *abrogated on other grounds by Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541 (7th Cir. 2016)); *see also, e.g.*, *Chicago Teachers Union, Local No. 1. v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 437 (7th Cir. 2015) ("[A] company-wide practice is appropriate for class challenge even where some decisions in the chain of acts . . . can be exercised by local managers with discretion—at least where the class at issue is affected in a common manner, such as where there is a uniform policy or process applied to all.").

The court agrees with Defendants that Plaintiff's class allegations, like those in *Dukes*, do not identify any "glue" that unites "the alleged *reasons*" for which Humana denied each putative class member's benefits clam. (Humana Mot. 25 (quoting *Dukes*, 564 U.S. at 562).) Plaintiff's Complaint alleges that the Plan gives Humana broad discretion to determine whether the member is entitled to the benefit at issue. (*See* Compl. ¶ 14; Plan Benefits Description QCP-2.) As part of that process, Humana must decide whether the proposed treatment is "medically necessary" given the member's individual medical circumstances. (*See* Compl. ¶ 14 (alleging that under the Plan, a treatment is "medically necessary" if, among other things, it is "[c]onsistent with the symptoms or diagnosis and treatment of [the member's] Illness or Injury" and is "[t]he most appropriate supply or level of service which can be safely provided to [the member]" (quoting Plan Benefits Description QCP-57-58)); *see also* Plan Benefits Description QCP-52 (stating that if an appeal "is based on a medical necessity or experimental treatment," Humana must provide "either an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to [the member's] medical circumstances").) To hold Defendants liable for wrongfully denying benefits or breaching its fiduciary duties under ERISA, each class member would need to show that Humana misapplied the Plan language to his or her specific medical circumstances. The evidence required to do so would "var[y] from member to member." *Messner*, 669 F.3d at 815. For example, the analysis would involve consideration of each member's medical background, age, type of cancer, and stage and malignancy of cancer. Because Humana

administers numerous plans (*see* Compl. ¶ 12), the relevant plan language would also vary by class member. Against this backdrop, Plaintiff's allegations nowhere identify a common way in which Humana applies the Plan (or other plans it administers) to deny PBRT coverage.

Plaintiff responds that the Policy—rather than the Plan—sets her case apart from *Dukes*. The Complaint alleges that, under the Policy, Humana "systemically rejects coverage for PBRT, asserting that more traditional radiation therapy, such as [IMRT], is more appropriate for almost all types of cancer." (*Id.* ¶ 19; *see also id.* ¶¶ 61-62 (alleging that Humana "relie[s] exclusively" on the Policy, "which is not contained in or incorporated into the Plan," to deny claims for coverage of PBRT under the Plan); Pl.'s Opp. 28-29 (contending that the Policy is "overly restrictive," "outdated," and "geared toward directing claim denials for all PBRT claims")). Plaintiff maintains, therefore, that the Policy injured "anyone who submitted a claim for PBRT to Humana," and that Humana's use of the Policy is a common issue for class-wide resolution. (Pl.'s Opp. 29.) She equates the Policy to the "biased testing procedure" that the *Dukes* Court stated would satisfy Rule 23's commonality requirement. (*See* Pl.'s Mot. 28; *Dukes*, 564 U.S. at 353 (explaining that if an employer "used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a)" (quoting *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)).

The trouble with Plaintiff's argument is that the Policy expressly states that it does *not* displace the terms of the Plan. (*See* Policy 1.) It also provides that it "is not intended to pre-empt the judgment of [Humana's] reviewing medical director or dictate to health care providers how to practice medicine." (*Id.*) And, perhaps most important, it does not compel Humana to grant or deny PBRT coverage for any particular medical condition. (*See id.* at 2 (stating that Humana members "*may be eligible* under the Plan" to receive PBRT for the indications enumerated in the Policy, and "*may NOT be eligible*" under the Plan to receive PBRT for other indications (emphasis added)).) Under both the Plan and the Policy, therefore, Humana has broad discretion to

determine whether a putative class member is entitled to PBRT treatment for his or her specific form of cancer, based on his or her individual circumstances. Plaintiff has not plausibly alleged that Humana applies the Policy in a uniform manner to deny PBRT treatment for all putative class members.

Plaintiff's case thus differs from *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018), where the court discerned several questions amenable to class-wide resolution, including whether the defendant's software license agreement disclaimed an implied warranty of merchantability and whether the representations in the defendant's advertisements would deceive a reasonable consumer. It is also unlike *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998), where the court was satisfied that the defendants had "engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters"; *Holmes v. Godinez*, 311 F.R.D. 177, 218 (N.D. Ill. 2015), where, although "individualized considerations" may have been required "down the line," the plaintiffs sufficiently pleaded the existence of "system-wide policies" that injured "deaf and hard of hearing" class members; and *Rasho v. Walker*, No. 07-1298-MMM, 2016 WL 11514940, at *2 (C.D. Ill. Feb. 8, 2016), in which the entire proposed class was "subject to the same policies which foster inadequate mental health diagnosis and treatment." The court further notes that, according to the Complaint, Humana referenced numerous sources to administer Plaintiff's claim, including NCCN Guidelines, at least one clinical trial, and Plaintiff's medical records. (*See, e.g.*, Compl. ¶¶ 36, 37, 39; Dr. Kumar Report 2-3.) Though it is plausible that Humana made an unreasonable decision based on those sources in Plaintiff's case, these allegations contradict the assertion that Humana relies exclusively on the Policy to make PBRT coverage determinations and underscores the individualized nature of the determinations.

For these reasons, the court concludes that Plaintiff's Complaint does not satisfy Rule 23(b)'s commonality requirement. *See, e.g.*, *Priddy*, 870 F.3d at 660. The court, therefore, need not address Plaintiff's arguments that she satisfies the requirements of Rules 23(b)(1)-(3). *See,*

*e.g.*, *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 801 (7th Cir. 2017) (where a plaintiff has not shown the existence of common questions, she "necessarily" cannot meet "the more strenuous predominance requirement of Rule 23(b)(3)").

### 2. Fail-safe class

Class certification is also inappropriate on the record before the court because the class Plaintiff has attempted to define is "fail-safe"—that is, "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner*, 669 F.3d at 825. Such a class definition is impermissible because "a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* As currently pleaded, the class would include only plan members who applied or will apply "for coverage of PBRT based on up-to-date consensus research-supported indications of such treatment for their conditions," and whose claims were or will be denied "based on a determination by Humana that PBRT for up-to-date consensus research-supported indications is not medically necessary and/or experimental, investigational, or unproven." (Compl. ¶ 47.) Under this definition, a person qualifies for class membership only if the up-to-date research shows that PBRT treatment is appropriate for his or her condition. And Plaintiff claims that when Humana denies coverage for PBRT in that circumstance, it necessarily breaches the Plan and violates ERISA. (*See, e.g.*, Compl. ¶¶ 21-22, 60-62, 68-70.) Thus, a person's membership in the class proposed here plainly "depends on whether [he or she] has a valid claim." *Messner*, 669 F.3d at 825.

Plaintiff argues that the Policy is central to her claims and that, when PBRT coverage denials are "re-evaluated without use of the" Policy, "there may be other grounds to uphold" them. (Pl.'s Opp. 36.) According to Plaintiff, a person's membership in the class therefore does not depend on claim validity. The court disagrees. As Defendants point out, Plaintiff's argument is untethered to the class definition, which neither mentions the Policy nor allows for upholding a claim denial on "other grounds." (*See* Humana Reply 17.) To be sure, the problem of a fail-safe class "can and often should be solved by refining the class definition rather than by flatly denying

class certification on that basis." *Messner*, 669 F.3d at 825. But Plaintiff has not proposed an alternative, workable definition. And her class allegations fail in any event because they do not plead common issues of law or fact. The court therefore strikes Plaintiff's class allegations without prejudice.

### CONCLUSION

For the foregoing reasons, the court denies Defendant Humana Insurance Company's and Defendant OSF HealthCare System Group Medical and Dental Plan's Motion to Dismiss the Complaint [24] [28], except for the breach of fiduciary duty claim asserted against the Plan, which the court dismisses. The court grants, without prejudice, Defendants' Motions to Strike the Class Allegations [24] [28].

ENTER:

Dated: June 1, 2020

REBECCA R. PALLMEYER
United States District Judge